# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| **Covenant Weddings LLC** and **Kristi Stokes,** | Case No. 1:20-cv-01622 _____ |
| Plaintiffs, | **Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction** |
| v. | |
| **Cuyahoga County,** | Oral Argument Requested |
| Defendant. | |

## TABLE OF CONTENTS

Introduction ............................................................................................ 1

Summary of Facts ................................................................................... 1

Argument ................................................................................................. 3

I.      The County law compels Kristi to participate in religious ceremonies
        against her religious beliefs. ...................................................... 4

II.     The County law compels Kristi to orally speak messages she objects to. ......... 5

        A.      Kristi engages in protected speech. ........................................... 6

        B.      The County compels Kristi to speak. ......................................... 6

        C.      The County compels Kristi to speak messages she objects to. .............. 8

III.    The County law compels Kristi to write messages she objects to. ................... 10

IV.     The County law compels speech based on content and viewpoint. ................. 10

V.      The County law restricts speech based on content and viewpoint. ................. 12

VI.     The County law fails strict scrutiny as applied to Kristi. ............................... 14

Conclusion ............................................................................................ 15

# TABLE OF AUTHORITIES

***Cases:***

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,*
    564 U.S. 721 (2011) .......................................................................... 12

*Ashcroft v. ACLU,*
    542 U.S. 656 (2004) .......................................................................... 14

*Barr v. American Ass'n of Political Consultants, Inc,*
    No. 19-631, 2020 WL 3633780 (U.S. July 6, 2020) ........................ 12

*Bays v. City of Fairborn,*
    668 F.3d 814 (6th Cir. 2012) ........................................................ 3, 4

*Brown v. Entertainment Merchants Ass'n,*
    564 U.S. 786 (2011) .......................................................................... 14

*Brush & Nib Studio, LC v. City of Phoenix,*
    448 P.3d 890 (Ariz. 2019) ............................................................ 9, 10

*City of Cleveland v. Nation of Islam,*
    922 F. Supp. 56 (N.D. Ohio 1995) ...................................................... 7

*Claybrooks* v. *American Broadcasting Companies, Inc.,*
    898 F. Supp. 2d 986 (M.D. Tenn. 2012) ............................................ 7

*Cressman v. Thompson,*
    798 F.3d 938 (10th Cir. 2015) ............................................................ 5

*ETW Corp. v. Jireh Publishing, Inc.,*
    332 F.3d 915 (6th Cir. 2003) .............................................................. 6

*Freedom Watch, Inc. v. Google, Inc.,*
    No. 19-7030, 2020 WL 3096365 (D.C. Cir. May 27, 2020) .............. 15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) .......................................................................... 13

*Groswirt v. Columbus Dispatch,*
    238 F.3d 421 (Table), 2000 WL 1871696 (6th Cir. 2000) .................. 7

*Heffron v. International Society for Krishna Consciousness, Inc.,*
  452 U.S. 640 (1981) ........................................................................................ 6

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,*
  515 U.S. 557 (1995) ................................................................... 5, 7, 9, 10, 14

*Janus v. American Federation of State, County, & Municipal Employees,*
  *Council 31,*
  138 S. Ct. 2448 (2018) ................................................................................ 7, 8

*Johari v. Ohio State Lantern,*
  76 F.3d 379 (Table), 1996 WL 33230 (6th Cir. 1996)........................................ 7

*Kaplan v. California,*
  413 U.S. 115 (1973) ........................................................................................ 6

*Lee v. Weisman,*
  505 U.S. 577 (1992) ........................................................................................ 4

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
  138 S. Ct. 1719 (2018) ............................................................................ 4, 5, 14

*McGlone v. Metropolitan Government of Nashville,*
  749 F. App'x 402 (6th Cir. 2018) .................................................................... 13

*Miami Herald Publishing Co. v. Tornillo,*
  418 U.S. 241 (1974) ...................................................................................... 10

*Murdock v. Pennsylvania,*
  319 U.S. 105 (1943) ........................................................................................ 6

*Obergefell v. Hodges,*
  135 S. Ct. 2584 (2015) .................................................................................... 4

*Pacific Gas & Electric Co. v. Public Utilities Commission of California,*
  475 U.S. 1 (1986) ...................................................................................... 6, 11

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) .......................................................................... 10, 13, 14

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
  487 U.S. 781 (1988) .................................................................................. 10, 11

*Rosenberger v. Rector & Visitors of University of Virginia,*
    515 U.S. 819 (1995) ........................................................................ 13

*Telescope Media Group v. Lucero,*
    936 F.3d 740 (8th Cir. 2019) ................................... 5, 8, 9, 11, 12, 14

*Thomas v. Bright,*
    937 F.3d 721 (6th Cir. 2019) .......................................................... 12

*Turner Broadcasting System, Inc. v. F.C.C.,*
    512 U.S. 622 (1994) ........................................................................ 11

*Turner v. Safley,*
    482 U.S. 78 (1987) ............................................................................ 4

*United States v. Varner,*
    948 F.3d 250 (5th Cir. 2020) ............................................................ 8

*West Virginia State Board of Education v. Barnette,*
    319 U.S. 624 (1943) .......................................................................... 9

*Wooley v. Maynard,*
    430 U.S. 705 (1977) ...................................................................... 5, 9

*World Peace Movement of America v. Newspaper Agency Corp.,*
    879 P.2d 253 (Utah 1994) .............................................................. 10

### Statutes and Regulations:

29 C.F.R. § 1604.2 ................................................................................ 15

42 U.S.C. § 2000a(b) ............................................................................ 15

Colo. Rev. Stat. § 24-34-601(3) ............................................................ 15

Cuyahoga County Code § 1501.01(K) ................................................ 5, 12

Cuyahoga County Code § 1501.02(C).................................................. 4, 11

Fla. Stat. § 760.02(11)........................................................................... 15

Miss. Code § 11-62-1 *et. seq.*............................................................. 15

## Introduction

Kristi Stokes is an ordained minister and evangelical Christian with a passion for serving others and sharing her beliefs about marriage. Compl. ¶¶ 11, 31. In 2019, she started Covenant Weddings LLC, where she offers, on commission, to (1) officiate weddings ("officiating services") and (2) write wedding homilies, vows, and prayers ("composition services"). *Id.* ¶¶ 51–52. Like many ministers, Kristi works with all people; she just can't celebrate every wedding requested of her. For Cuyahoga County though, this religious freedom goes too far.

In the name of stopping sexual-orientation and gender-identity discrimination, the County recently passed a law that requires Kristi to officiate and celebrate weddings that violate her faith—same-sex weddings and weddings where couples identify contrary to their biological sex—because she does the same for weddings between a man and woman. The law penalizes Kristi's ongoing non-compliance with thousand-dollar fines, coercive injunctions, and uncapped attorney fees. This in turn imperils her business, chills her speech, and violates her conscience. But the County cannot jettison religious freedom or compel speech by labelling disfavored views "discrimination." The First Amendment gives citizens the right to choose which weddings they perform and which ceremonies they promote— not County officials. For these reasons, Kristi asks for a preliminary injunction to stop this law from threatening her religious and expressive freedoms.

## Summary of Facts

Kristi believes that everything she does should glorify God. *Id.* ¶ 15. Hence, Kristi desires to use her God-given talents to celebrate marriage as God designed it. *Id.* ¶¶ 80–84. And Kristi believes weddings are inherently religious events, giving her words and actions extra significance. *Id.* ¶ 73.

1

Kristi also believes that her wedding services are meant to be aesthetically pleasing works that reflect God. *Id.* ¶ 78. For example, Kristi believes that God created marriage as a permanent institution to reflect the eternal covenant between Jesus and His Church. *Id.* ¶ 70. So Kristi always incorporates Scripture into her written materials and emphasizes the permanence of marriage by using phrases like "in sickness and in health" and "till death do us part." Decl. ¶¶ 133–36. Likewise, Kristi believes that God created marriage to be a sex-differentiated union between only one biological man and one biological woman, that God created every person to be male or female, and that people should act and identify in a way consistent with their God-given biological sex. Compl. ¶¶ 71–72, 74–76. So in her written and oral homilies, vows, and prayers, Kristi uses celebratory and gender-differentiated language like "husband and wife," "bride and groom," and "Mr. & Mrs." to promote this view of marriage and gender. *Id.* ¶¶ 138–39, 141–42, 168–71.

Because of her desire to follow and promote these beliefs, Kristi's policy and practice is to only officiate or celebrate weddings between one biological man and one biological woman. *Id.* ¶ 181. Kristi does not officiate or write materials to celebrate open or same-sex marriages. *Id.* ¶¶ 187–88. Kristi also does not officiate or write materials to celebrate weddings where one or both participants identify or present contrary to their biological sex. *Id.* ¶ 188.

But still Kristi works with all people. She will, for instance, officiate or write materials to celebrate a wedding if one or both of the marrying couple is bisexual or struggles with gender dysphoria so long as the wedding celebrates a lifelong relationship between one biological man and one biological woman. *Id.* ¶¶ 190–97. Kristi will also work with a gay father or a mother who identifies as a male and seeks services for their son or daughter's opposite-sex wedding. *Id.* ¶ 194. The

2

important thing for Kristi is that the wedding's message does not conflict with her religious convictions. *Id.* ¶ 198. And for this reason, Kristi always retains complete editorial control to ensure that any wedding she celebrates does not violate her artistic judgment or religious beliefs. *Id.* ¶¶ 99–101, 106–13.

Kristi also wants to be forthright about the services she provides by explaining her services and beliefs on her website and social media sites. *Id.* ¶¶ 199–201, 257–60, Ex. 1 (desired website statement). And Kristi wants to ask prospective clients whether they seek to celebrate same-sex weddings or weddings where individuals identify contrary to their biological sex. *Id.* ¶¶ 200, 249

But because Kristi offers services to celebrate opposite-sex weddings, Title 15 of the Cuyahoga County Code forces her to offer services to celebrate same-sex weddings and weddings that affirm gender identities contrary to one's biological sex and to abandon her policy of not celebrating these weddings. *Id.* ¶¶ 219–24. Specifically, County Code § 1501.02(C) ("the Accommodations Clause" or "the law") prohibits public accommodations like Covenant Weddings from "discriminat[ing] against" anyone because of "sexual orientation, or gender identity or expression." *Id.* ¶ 219. The law also forbids Kristi from posting her desired statement on her website or from asking prospective clients whether they seek services for a wedding she cannot celebrate. *Id.* ¶¶ 225–26, 228, 231. Kristi even recently received a request to officiate a wedding that violates her beliefs. *Id.* ¶¶ 204–07.

## <u>Argument</u>

To evaluate a preliminary injunction motion, courts consider plaintiff's likelihood of success on the merits; whether the plaintiff will suffer irreparable harm without an injunction; the balance of the equities; and the public interest. *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). But in this case,

likelihood of success is the "crucial inquiry" because First Amendment violations always cause irreparable harm and stopping them always serves the public interest. *Id.* at 819, 825 (citation omitted). Kristi satisfies this crucial inquiry. She will likely show that the County law (I) compels her to participate in religious ceremonies, (II–III) compels her to speak and write, (IV–V) compels and restricts her speech based on content and viewpoint, and (VI) these regulations fail strict scrutiny.

## I.    The County law compels Kristi to participate in religious ceremonies against her religious beliefs.

The First Amendment "guarantees at a minimum that a government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). This principle comes from both the Establishment and Free Exercise Clauses. *Id.* (grounding principle in former); *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1727 (2018) (doing so in latter).

But the County violates this principle by forcing Kristi to officiate and thereby participate in weddings—events she considers religious and events she uses religious language to celebrate. Compl. ¶¶ 73, 138–44. Courts agree and have affirmed "the transcendent importance of marriage" that is "sacred" to many. *Obergefell v. Hodges*, 135 S. Ct. 2584, 2594 (2015); *Turner v. Safley*, 482 U.S. 78, 96 (1987) ("[M]any religions recognize marriage as having spiritual significance ….").

The County law compels Kristi to participate in these ceremonies because it prohibits public accommodations (like Covenant Weddings) from "discriminat[ing] against, or treat[ing] differently any person … regardless of … sexual orientation, or gender identity or expression" when providing "the full enjoyment" of "accommodations, advantages … or privileges." § 1501.02(C)(1)(a). In other words, the law forces Kristi to offer the same services for same-sex weddings and weddings

between participants who identify contrary to their biological sex that she offers for weddings between a man and woman who identify with their sex. *See Telescope Media Grp. v. Lucero* (*TMG*), 936 F.3d 740, 748 (8th Cir. 2019) (similar law required filmmakers to create same-sex wedding films once they offered to make "*any wedding videos*" for anyone).

The County law also defines illegal "discrimination" broadly to include any "segregation, separation … or any unfavorable difference in treatment" based on those traits mentioned above. § 1501.01(K). This means Kristi cannot even maintain a policy limiting her services (a "segregation" or "separation") to those that celebrate her definition of marriage and gender.

Practically, these requirements force Kristi—an ordained minister—to offer and then to officiate, participate in, and celebrate wedding ceremonies that violate her faith and to abandon any contrary policy. Compl. ¶¶ 219–24. The Supreme Court has already declared this unconstitutional: "[A] member of the clergy who objects to gay marriage on moral and religious grounds could not be compelled to perform the ceremony without denial of his or her right to the free exercise of religion." *Masterpiece*, 138 S. Ct. at 1727.

## II. The County law compels Kristi to orally speak messages she objects to.

The First Amendment protects "the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). A compelled-speech claim has three elements: (1) speech, (2) the government compels, (3) and the speaker objects to. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572–73 (1995) (applying elements); *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015) (identifying elements). Here, the County compels

Kristi's speech by forcing her to deliver messages about marriage she objects to. This triggers strict scrutiny. *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal. (PG&E)*, 475 U.S. 1, 19 (1986) (plurality) (strict scrutiny for law compelling speech).

**A. Kristi engages in protected speech.**

"[B]oth oral utterance and the printed word have First Amendment protection …." *Kaplan v. California*, 413 U.S. 115, 119–20 (1973). This protection covers activities like "preaching from the pulpits," *Murdock v. Pennsylvania*, 319 U.S. 105, 109 (1943), and "oral and written dissemination of … religious views." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).

Here, Kristi speaks every time she officiates. She delivers homilies, administers vows, and leads prayers. Compl. ¶¶ 120, 125–36, 141–43. What's more, Kristi uses her wedding services to promote her religious beliefs about God's design for marriage, sex, and gender. Compl. ¶¶ 83–89. This is quintessential speech.

Nor does this protection go away because Kristi receives a commission. "Speech is protected even though it is carried in a form that is sold for profit." *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003). This is true whether Kristi writes her own material or uses someone else's script. Those "disseminating the work of others who create expressive materials also come wholly within the protective shield of the First Amendment." *Id.* at 925. For every wedding piece she delivers, Kristi still retains editorial discretion over its content and reserves the right to reject content contrary to her beliefs. Compl. ¶¶ 99–101, 106–13. That means it is Kristi's speech, and it is also protected speech.

**B. The County compels Kristi to speak.**

As explained above, the Accommodations Clause requires Kristi to offer the same services for same-sex weddings, and weddings where participants identify

contrary to their biological sex, that she offers for opposite-sex weddings. *Supra* § I.
So, because Kristi orally delivers wedding homilies, vows, and prayers about
opposite-sex weddings, Kristi must do the same about weddings she objects to or
she faces injunctions and severe fines. *See* Compl. ¶ 296. This compels speech.

The *Hurley* decision proves the point. There, an LGBT group tried to use a
public accommodations law to force parade organizers to accept that group into the
organizer's parade. 515 U.S. at 561. Although that law did "not, on its face, target
speech or discriminate on the basis of its content" and its "focal point" was stopping
"the act of discriminating," the law still compelled speech because its "application …
had the effect of declaring [] speech itself to be the public accommodation." *Id*. at
572–73. *Hurley* instructs courts to look beyond a law's text or purpose to whether it
compels speech as applied. *Id*. at 572. And here the law does exactly that. When
applied to Kristi, it forces her to orally deliver wedding homilies, prayers, and vows.

The Sixth Circuit has similarly ruled that anti-discrimination laws cannot
force newspapers to publish letters because that would compel speech. *Groswirt v.
Columbus Dispatch*, 238 F.3d 421 (Table), 2000 WL 1871696 at *2 (6th Cir. 2000);
*Johari v. Ohio State Lantern*, 76 F.3d 379 (Table), 1996 WL 33230 at *1 (6th Cir.
1996). And courts in this Circuit—citing *Hurley*—have ruled that anti-
discrimination laws cannot force studios to alter their television-show content or
orators to alter their lecture content. *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F.
Supp. 2d 986, 999 (M.D. Tenn. 2012); *City of Cleveland v. Nation of Islam*, 922 F.
Supp. 56, 59 (N.D. Ohio 1995). Under that logic, the County compels speech by
forcing Kristi to orally deliver wedding content.

7

**C. The County compels Kristi to speak messages she objects to.**

"Compelling individuals to mouth support for views they find objectionable violates [a] cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018).

So too in this context. Kristi believes that God designed marriage to be a sex-differentiated union between one biological man and one biological woman. Compl. ¶ 71. When Kristi delivers wedding homilies, vows, or prayers, she necessarily conveys positive views about that particular marriage. *Id.* ¶¶ 119–37, 140–45. Kristi also necessarily celebrates a particular view of sex and gender by using gender-differentiated language such as the couple's names or pronouns. *Id.* ¶¶ 138–42.

That means, if Kristi officiated same-sex weddings, she would have to speak positive messages about marriage she finds "objectionable." *TMG*, 936 F.3d at 754 n.4. Similarly, if Kristi officiated weddings with someone who identifies contrary to their biological sex, Kristi would have to utter words contrary to her beliefs about sex and gender identity. She would have to use masculine pronouns and other language (like "he," "him," "husband," and "groom") and apply them to biological women. The law even forces Kristi to use fabricated pronouns like "Zer" and "Zie."

This is no small thing. For starters, the County's law necessarily changes the content of Kristi's desired message—that marriage is and should be between one biological man and one biological woman. *Compare* Decl. ¶¶ 114–18 *and* App. at 78–86 (Kristi's wedding script) *with* App. at 318–371 (same-sex wedding scripts). But even worse, the County law requires Kristi to affirm an ideological view of marriage and gender she disagrees with when people strongly dispute these issues. Surely if courts cannot force litigants and lawyers to "refer to gender-dysphoric

8

litigants with pronouns matching their subjective gender identity," *United States v. Varner*, 948 F.3d 250, 254–55 (5th Cir. 2020), the County cannot force private citizens to publicly use gender-differentiated language in a way that violates their core convictions about marriage and gender. Words matter. And the government doesn't get to compel Kristi to "utter" words that are "not in [her] mind," *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943), or to serve as a "mobile billboard" for an "ideological message" she disputes. *Wooley*, 430 U.S. at 715.

As both the Eighth Circuit and Arizona Supreme Court have held, governments may not use public accommodation laws to compel artists to celebrate views they dispute. That would alter their desired message and force them "to convey the same 'positive' message in their [expression] about same-sex marriage as they do for opposite-sex marriage." *TMG*, 936 F.3d at 753; *Brush & Nib Studio, LC v. City of Phoenix (B&N)*, 448 P.3d 890, 909 (Ariz. 2019) (forcing artists to write wedding invitations compelled speech because "writing the names of two men or two women … clearly *does* alter the overall expressive content of [studio's] wedding invitations"). The County's law does the same when it forces Kristi to convey positive messages about same-sex marriage and gender identity.

None of this means Kristi objects to any person. For Kristi, it's about the content requested, not the client requesting. She works with clients regardless of sexual orientation or gender identity so long as she does not have to speak messages she objects to. For example, Kristi would work for same-sex parents seeking services for their daughter marrying a man or for weddings between a bisexual woman and man so long as the couple intends to stay married. *See* Compl. ¶¶ 190–98.

9

Courts have repeatedly drawn this distinction and allowed speakers to decline messages even when requested by those in protected groups. *Hurley*, 515 U.S. at 572, 574–75 (parade organizers could decline "message it disfavored"—the "unqualified social acceptance of gays and lesbians"—because it did not exclude "homosexuals as such" from parade); *B&N*, 448 P.3d at 910 (declining to create same-sex wedding invitations "based on *message*, not *status*"); *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 258 (Utah 1994) (newspaper could decline religious advertisement because "it was the message itself that [newspaper] rejected, not its proponents"). This Court should too.

## III.   The County law compels Kristi to write messages she objects to.

For the same reasons Kristi cannot be forced to *orally* deliver wedding homilies, vows, and prayers, *supra* § II, she cannot be forced to *write* homilies, vows, and prayers either. First Amendment protection doesn't disappear when mediums change. Both oral and written communication are protected. *See supra* § II.A (citing cases). Indeed, the Arizona Supreme Court has held that public accommodation laws cannot force artists to *write* same-sex wedding invitations because that would compel speech. *B&N*, 448 P.3d at 910. The same logic means the County cannot force Kristi to write wedding homilies, vows, and prayers she objects to. *Cf. Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257–58 (1974) (law could not force newspapers to print objectionable op-eds).[1]

## IV.   The County law compels speech based on content and viewpoint.

Laws may not regulate speech "because of its message, its ideas, its subject matter, or its content" without overcoming strict scrutiny. *Reed v. Town of Gilbert*,

---

[1] Besides compelling her verbal speech, compelling Kristi's officiating services also forces her to write messages she objects to because she fills out and files marriage certificates for every wedding she officiates. Compl. ¶¶ 157–58.

576 U.S. 155, 163 (2015) (cleaned-up). The County law fails this standard in four ways.

First, the law forces Kristi to convey messages she "would not otherwise make," which "necessarily alters the content" of her speech and constitutes "a content-based regulation." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). *See supra* § II.C (explaining how law alters content).

Second, the County law only compels Kristi to speak because of her speech-content elsewhere. If Kristi wrote prayers to end climate change, the law does not force her to write about same-sex weddings. Only because Kristi speaks about opposite-sex weddings must she speak about weddings she disagrees with. *See PG&E*, 475 U.S. at 13–14 (law regulates content if triggered by a particular category of speech); *TMG*, 936 F.3d at 753 (public accommodation law regulated based on content by treating opposite-sex wedding films "as a trigger for compelling [filmmakers] to talk about a topic they would rather avoid—same-sex marriages").

Third, the County law confers access to Kristi's services based on speaker viewpoint. When Kristi speaks about opposite-sex weddings, the law does not require her to fulfill every request sent to her. Instead, the law only forces Kristi to offer services to celebrate views about marriage and gender she disagrees with—those wanting to celebrate same-sex marriage and certain views on gender identity. *See PG&E*, 475 U.S. at 13 (law regulates content when awarding access "only to those who disagreed with the [speaker's] views"); *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 654 (1994) (law in *PG&E* content-based because it "conferred benefits to speakers based on viewpoint, giving access only to a consumer group opposing the utility's practices").

11

Fourth, the County law plays favorites, allowing speakers to avoid some views but not others. It does so by allowing public accommodations to enact "affirmative action plan[s] … devised to effectuate remedial or corrective action taken in response to past discriminatory practices against a historically marginalized group." § 1501.02(E)(2). The County likely considers historically marginalized groups to include those seeking to celebrate same-sex weddings and identifying contrary to their biological sex. And that means the County allows paid speakers to, for example, decline requests celebrating opposite-sex weddings so that they can accept requests celebrating same-sex weddings—but not the reverse. This in turn seeks to "increase the speech of some at the expense of others," which is unconstitutional. *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 739–41 (2011).

## V.    The County law restricts speech based on content and viewpoint.

Besides compelling speech, the law also restricts speech based on content and viewpoint. A law does this if it cannot be justified without referencing content or if officials must evaluate content to determine whether a violation occurred. *Thomas v. Bright*, 937 F.3d 721, 729 & n.2 (6th Cir. 2019).

Here, the law forces Kristi to offer expressive services celebrating same-sex weddings and weddings affirming gender identities contrary to biological sex. *See supra* §§ I–II.B. This requirement also means that the law forbids Kristi from *telling* someone she cannot create this speech because the law forbids declining certain services. *See TMG,* 936 F.3d at 757 n.5 (state interpreting public accommodation law this way). The law also forbids Kristi from even *asking* someone if they seek such services because it forbids any "unfavorable difference in treatment." § 1501.01(K). *See* Compl. ¶¶ 225–28.

12

This is an as-applied content restriction. Whether the law restricts a statement turns on what that statement declines or asks. Statements saying "no prayers about animals" are allowed; those saying "no prayers about same-sex weddings" are forbidden. *See Barr v. Am. Ass'n of Political Consultants, Inc*, No. 19-631, 2020 WL 3633780, at *5 (U.S. July 6, 2020) (law regulating robocalls content-based for similar reasons). It all turns on content. The same is true when applied to Kristi's speech. She wants to publish a statement declining certain requests and ask clients if they seek services celebrating same-sex weddings or weddings affirming gender identities contrary to biological sex. Compl. ¶¶ 199–201, 249, 257–60. But the County law forbids these statements because of their content, i.e., the services mentioned in these statements.

This restriction also regulates Kristi's statement based on viewpoint—it "targets not subject matter, but particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Here, the law allows Kristi to post statements supporting marriage generally, supporting same-sex and opposite-sex marriage, or indicating a desire to create speech celebrating same-sex and opposite-sex marriages. She just cannot indicate a desire to or ask questions to ensure she only creates speech celebrating weddings between a man and woman who identify consistent with their sex. These restrictions favor some views over others. That is viewpoint discrimination. *See McGlone v. Metro. Gov't of Nashville*, 749 F. App'x 402, 405 & n.1 (6th Cir. 2018) (restricting speech against homosexuality was content and "likely" viewpoint-based).

13

## VI.    The County law fails strict scrutiny as applied to Kristi.

Because the County compels and restricts speech based on content and viewpoint, the County must show that regulating Kristi is narrowly tailored to serve a compelling state interest. *Reed*, 576 U.S. at 162–63.

For compelling interest, the County may invoke its interest in stopping discrimination. But courts "look[] beyond broadly formulated interests" and consider "the asserted harm of granting specific exemptions to particular ... claimants." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). Here, the County cannot cite discrimination to regulate Kristi because she does not discriminate. She merely declines to officiate and write wedding content if doing so conveys a message she disagrees with. *See supra* § II.C.

What's more, courts have held that stopping discrimination does not justify compelling speech or forcing ministers to officiate weddings. *Hurley*, 515 U.S. at 579 (using public accommodations law to compel speech was "fatal objective"); *Masterpiece*, 138 S. Ct. at 1727 (laws cannot force ministers to officiate same-sex weddings); *TMG*, 936 F.3d at 755 (surveying cases for compelled-speech point).

The County also undermines its discrimination interest by allowing public accommodations to enact affirmative action programs. *Supra* § IV. The County cannot explain why it allows businesses to engage in rank status discrimination (like refusing to serve men) but requires Kristi to speak messages she objects to. *See Reed*, 576 U.S. at 172 (law "cannot be regarded as protecting an interest of the highest order … when it leaves appreciable damage to that supposedly vital interest unprohibited") (cleaned-up).

The County cannot even identify an "actual problem" that justifies regulating Kristi. *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011). Many wedding

14

officiants and writers in Ohio gladly celebrate LGBT weddings. Decl. ¶¶ 290–391. Forcing Kristi to do so despite so many alternatives makes little sense.

For narrow tailoring, the County must prove regulating Kristi is "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). But the County has many better options. First, it could apply its law to status discrimination, not declining to speak messages; many courts already do this. *Supra* § II.C. Next, the County could narrow its public-accommodations definition to exclude businesses that create speech, provide non-essential services, or operate online only. *See* 42 U.S.C. § 2000a(b) (defining public accommodation narrowly); Fla. Stat. § 760.02(11) (same); *Freedom Watch, Inc. v. Google, Inc.*, No. 19-7030, 2020 WL 3096365, at *2 (D.C. Cir. May 27, 2020) (interpreting public accommodations law to only cover physical places).

Third, the County could create a BFOQ exception that allows businesses to decline when doing so has a "bona fide relationship" to the services offered. Colo. Rev. Stat. § 24-34-601(3). Declining services that convey objectionable messages fits the bill. *Cf.* 29 C.F.R. § 1604.2 (allowing production studios to make classifications under Title VII when "necessary for the purpose of authenticity or genuineness … e.g., [selecting] an actor or actress"). Finally, the County could exempt ministers, writers, and other artists who speak or participate in weddings. Mississippi does just that without trouble. Miss. Code § 11-62-1 *et. seq.*

## Conclusion

Forcing Kristi to officiate and celebrate weddings she disagrees with violates the First Amendment and ultimately threatens everyone's religious liberty and free speech. To stop this violation, Kristi asks this Court to grant her preliminary injunction motion.

Respectfully submitted this 22nd day of July, 2020.

Jonathan A. Scruggs
AZ Bar No. 030505*
Katherine L. Anderson
AZ Bar No. 033104*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ  85260
(480) 444-0020
(480) 444-0028 (facsimile)
jscruggs@ADFflegal.org
kanderson@ADFlegal.org

David A. Cortman
GA Bar No. 188810*
Alliance Defending Freedom
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (facsimile)
dcortman@ADFlegal.org

Johannes S. Widmalm-Delphonse
MN Bar No. 396303*
Alliance Defending Freedom
20116 Ashbrook Place, Suite 258
Ashburn, VA 20147
(571) 707-4655
(571) 707-4656 (facsimile)
jwidmalmdelphonse@ADFlegal.org

_s/ Matthew J. Burkhart_
Matthew J. Burkhart
OH Bar No. 0068299
Gallagher Kavinsky & Burkhart LPA
8740 Orion Place, Suite 200
Columbus, OH 43240-4063
(614) 885-9022
(614) 885-9024 (facsimile)
mjb@gkb-law.com

ATTORNEYS FOR PLAINTIFFS

*Motions for _Pro Hac Vice_ Admission filed concurrently

16

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2020, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system. I further certify that the foregoing memorandum will be served on the Defendant by process server with the Summons and Complaint.

*s/ Matthew J. Burkhart*
Matthew J. Burkhart