# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **COVENANT WEDDINGS LLC** and **KRISTI STOKES,** | ) ) ) | CASE NO. 1:20-cv-01622 |
| Plaintiffs, | ) ) ) | JUDGE JAMES S. GWIN |
| vs. | ) ) ) | |
| **CUYAHOGA COUNTY,** | ) ) | **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR** |
| Defendant. | ) | **PRELIMINARY INJUNCTION** |

  Plaintiff Kristi Stokes alleges she is an ordained minister who seeks to minister through her private business "Covenant Weddings, LLC." Plaintiffs Stokes and Covenant Weddings, LLC bring this lawsuit against Cuyahoga County alleging that Cuyahoga Cnty. Code § 1501.02(C)(2) ("Accommodations Clause") is unconstitutional because it violates their rights under the First Amendment of the U.S. Constitution.[1] Plaintiffs move this Court for a preliminary injunction to enjoin the County from enforcing the Accommodations Clause against them. But Plaintiffs lack standing to bring this lawsuit because the Accommodations Clause does not apply to them and, even if it did, they cannot satisfy the "injury in fact" requirement. Moreover, Plaintiffs cannot show that the Accommodations Clause, on its face, violates the First Amendment.

## FACTS

  Plaintiff Kristi Stokes ("Stokes") is the sole member-owner of Plaintiff Covenant Weddings, LLC ("Covenant"). Covenant provides essentially two services: (1) officiating weddings and (2) composing homilies, vows, and prayers. (*See* Compl. ¶52). Stokes does not want to provide these services to same-sex couples because her religious beliefs compel her to believe that marriage is a sacred union between a man and a woman. (*Id.* at ¶61; 167-169).

---

[1]   Under Plaintiffs' Fourth Cause of Action, they assert that their religious freedoms under Article 1, §7 of the Ohio Constitution have been violated. But Plaintiffs do not seek a preliminary injunction with respect to this claim.

According to Plaintiffs, Cuyahoga Cnty. Code § 1501.02 ("Accommodations Clause") requires her to provide the "full enjoyment" of services for same-sex marriages as she would for "conventional" marriages. (*See* Compl. ¶226). Cuyahoga Cnty. Code § 1501.02(C)(2) prohibits "Places of Public Accommodation" from engaging in certain unlawful discriminatory practices:

It shall be an unlawful discriminatory practice:

a. For any proprietor or any employee, agent, keeper, or manager of a place of public accommodation to deny, discriminate against, or treat differently any person except for reasons applicable alike to all persons regardless of race, color, religion, military status, national origin, disability, age, ancestry, sex, sexual orientation, or gender identity or expression the full enjoyment of the accommodations, advantages, facilities, or privileges of a place of public accommodation;

b. For any person to knowingly aid, incite, compel, coerce, or participate in the doing of any act declared to be an unlawful discriminatory practice under this Section.

A "Place of Public Accommodation" is defined under Cuyahoga Cnty. Code § 1501.01(W):

"Place of public accommodation" means any hotel, motel, inn, restaurant, eating establishment, public swimming pool, public sports facility, public sports arena, theme park, amusement parks, museum, barbershop, public conveyance by air, land or water, movie theater, music arena, concert hall, performing arts venue, theater, store, or other place for the sale of merchandise to the public, or any other place of public accommodation or amusement where the accommodation advantages, facilities, or privileges thereof are available to the public.

Inherent in this definition is that the accommodation must be a place (e.g., hotel, motel, barbershop, public sports arena, etc.) that sells merchandise to the public or where the public accommodation's advantages, facilities, or privileges are available to the public. (*Id.*)

In their Complaint, Plaintiffs allege that Covenant Weddings is a "place of public accommodation because: (1) it provides services to the public on a commission basis; (2) its advantages and privileges are available to the public; (3) it solicits and accepts the patronage of the general public through social media and personal contacts. (*See* Plaintiffs' Complaint, ¶¶216-218). But Covenant does not allege that it has an actual place where these services are purportedly being provided.

Covenant's declaration states that the address to its principle place of business is identified in the Articles of Organization ("Articles"). (*See* Covenant Decl., Doc. 3-3, Page ID# 99). But there are only two addresses listed in the Articles. The first address is for Registered Agents, Inc., which is located at 6545 Market Ave., North Suite 100, North Canton, Ohio. (*See* Doc. 3-3, PageID #97). The second address is 7452 Broadview Road, Parma, Ohio 44134. (*See* Doc. 3-3, PageID #97). This address belongs to a UPS Store and there is no evidence that Covenant Weddings provides its services out of this place. (*See* Sulzer Decl., Ex. 1). Moreover, Plaintiffs failed to state in either their Complaint or Motion for Preliminary Injunction that Plaintiffs have a physical place that is open to the public where they provide their alleged wedding services. (*See, generally* Plaintiffs' Complaint; Plaintiffs' Motion for P.I.). Additionally, Covenant does not have a website - only a reserved domain name. (Compl. ¶45-46). The only presence Covenant has is on social media: Facebook and Instagram.

Plaintiffs seek a preliminary injunction to enjoin the County and its various officers from enforcing the Accommodations Clause against them. But the County has not threatened to enforce the Accommodations Clause against Plaintiffs. (*See* Holley Decl., Ex. 2) Nor has the County received discrimination complaints from anyone concerning Plaintiffs' business. (*Id.*) Additionally, the County's Human Rights Commission has not received any complaints nor has it enforced the Accommodations Clause against a minister or other religious group. (*Id.*) And since Plaintiffs do not have an actual "Place of Public Accommodation," the Accommodations Clause would not apply to them.

## **LEGAL ANALYIS**

A preliminary injunction is an extraordinary remedy that should be granted only when movants carry their burden of proving that the circumstances clearly demand it." *Command v. Bank of Am.*, 6th Cir. No. 11-1310, 2012 U.S. App. LEXIS 27201, at *3 (Mar. 5, 2012), quoting, *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). A district court must consider the following in determining whether to issue a preliminary injunction: (1) whether there is a substantial likelihood

that the plaintiff will succeed on the merits; (2) whether the party seeking the injunction will otherwise suffer irreparable harm; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest would be advanced by the injunction. *See Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 635 (6th Cir. 2010). Plaintiffs cannot meet this onerous burden; therefore, their request for a preliminary injunction should be denied.

I. **PLAINTIFFS LACKS A JUSTICIABLE CASE OR CONTROVERSY.**

There is no threat of enforcement against Plaintiffs; therefore, they lack standing to bring this action. "In the First Amendment arena ... especially when there is a possibility that, rather than risk punishment for his conduct in challenging the statute, [an individual] will refrain from engaging further in the protected activity, courts have been willing to relax prudential standing limitations and permit a third party to assert the rights of a person not otherwise before the court. Even in such situations, however, a court must still consider whether the third party has sufficient injury-in-fact to satisfy the Art[icle] III case-or-controversy requirement." *Greater Cincinnati Coalition for the Homeless v. City of Cincinnati,* 56 F.3d 710, 718 (6th Cir.1995).

In constitutional pre-enforcement challenges, the injury-in-fact requirement of Article III standing is satisfied if a Plaintiff alleges a "credible threat" that the Defendant will enforce the challenged law against it. *Susan B. Anthony List v. Drieshaus,* 573 U.S. 149, 158-9 (2014), citing *Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979).[2] Enforcement must be "sufficiently imminent." *Id.* Allegations "of *possible* future injury" are insufficient. *Vonderhaar v. Village of Evendale,* 906 F.3d 397, 401 (6th Cir. 2018) (internal citations omitted). In deciding whether a claim for pre-enforcement injuries is viable, there must be "some combination of:" "(1) a history of past enforcement… (2) enforcement warning letters sent to the plaintiff[] regarding [its] specific conduct…and/or (3) an attribute of the challenged

---

[2] Article III standing and ripeness concern the same question and should be considered together. *MedImmune, Inc. v. Genetech, Inc.,* 549 U.S. 118, 128, n8 (2007); *see also Winter v. Wolnitzek,* 824 F.3d 681, 687 (6th Cir. 2016).

4

status that makes enforcement easier or more likely… ." *Plunderbund Media, L.L.C. v. DeWine,* 753 Fed.Appx. 362, 3667 (6th Cir. 2018), citing *McKay v. Federspiel,* 823 F.3d 862, 869 (6th Cir. 2016). Courts may also consider a state actor's refusal to disavow future enforcement. *McKay,* 823 F.3d at 869.

Since *Driehaus*, the Sixth Circuit has not conferred standing on a plaintiff that cannot meet the *McKay* requirements of past, present, and threatened future enforcement. *See Plunderbund,* 753 Fed.Appx. at 368-72 (denying preliminary injunction because plaintiff-political bloggers did not show credible threat of prosecution under state statute, criminalizing internet conduct when there was neither prior nor threatened enforcement); *Vonderhaar,* 906 F.3d at 401-2 (denying preliminary injunction because there was no history of enforcement of property maintenance ordinance against plaintiff-property owners and future enforcement was not "certainly imminent"); *Miller v. Wickliffe, Ohio,* 852 F.3d at 866 (plaintiff-resident lacked standing to challenge recording device ban in limited public forum when there was no credible threat of enforcement).

Moreover, "for purposes of standing, subjective chill requires some specific action on the part of the defendant [for] the litigant to demonstrate an injury-in-fact. *Morrison v. Bd. of Edn.*, 521 F.3d 602, 609 (6th Cir.2008). In *Laird v. Tatum,* 408 U.S. 1, 10 (1972), the Court addressed "whether the jurisdiction of a federal court may be invoked by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere existence, *without more*, of a governmental investigative and data-gathering activity." *Id.* (emphasis in original). The Court determined that the "injury-in-fact" alleged by the plaintiffs resulted from their subjective perceptions and apprehensions. *See id.* at 13-14. Therefore, the Court deemed plaintiffs' allegations insufficient to confer standing. *Id.* at 13-14.

Here, Plaintiffs' fear of enforcement is based solely on their subjective perceptions and apprehension. There has been no threat of enforcement of the Accommodations Clause against Plaintiffs. (*See* Holley Decl.). Furthermore, the County Human Rights Commission has not received

any complaints that Plaintiffs violated the Accommodations Clause. *Id.* In fact, there have been no enforcement actions against any ministers or members of other religious groups under the Accommodations Clause for refusing to marry same-sex couples or denying them wedding services. (*Id.*) Nor have there been complaints by members of the public that a minister or members of other religious groups have violated the Accommodations Clause by refusing to marry or provide wedding services to same-sex couples. (*Id.*) Finally, there is no attribute of §1510.02(C)(2) that suggests enforcement against Plaintiffs is likely. Especially since the Plaintiffs are not "Places of Public Accommodation" against whom the Accommodations Clause would apply.

Under Cuyahoga Cnty. Code § 1501.01(W), a "place of public accommodation" is limited to a physical place, such as a "hotel, motel, inn, restaurant, eating establishment [etc…]." Even the Sixth Circuit has held, albeit in the context of the ADA, that a place of public accommodation must be a "physical" place. *See Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010 (6th Cir. 1997) (en banc) (holding that "places of public accommodation" must be "physical"). In their preliminary injunction motion, Plaintiffs fail to squarely address this fact and ask the Court to simply assume the mere provision of services is enough to qualify Covenant as a "place" subject to the Accommodations Clause. But Plaintiffs do not have a physical place where they provide weddings services of any kind. They have only a presence on social media. And the two addresses listed in the Articles of Organization belong to a UPS Store and Covenant's statutory agent. Since the Accommodations Clause applies only to places, and Covenant does not have a place where accommodations to the public are provided, Plaintiffs cannot establish a credible threat that the Accommodations Clause will be enforced against them. In fact, there is no threat whatsoever to Plaintiffs, and their decision to abstain from certain business practices is based on erroneous legal analysis and unfounded speculation.

Accordingly, Plaintiffs cannot satisfy the *McKay* criteria for establishing an "injury-in-fact," and Plaintiffs' purported injury is impermissibly "conjectural." *Lujan v. Defenders of Wildlife,* 504 U.S.

555, 560 (1992). Therefore, Plaintiffs lack standing and their request for a preliminary injunction should be denied.

## II.  PLAINTIFFS ARE UNLIKELY TO PREVAIL ON THEIR CLAIMS.

Even if Plaintiffs were subject to the Accommodations Clause, Plaintiffs are unlikely to prevail on their First Amendment claims because the Accommodation Clause is a law of general applicability and is not subject to strict scrutiny review. The County has a compelling interest in combatting discrimination and the Accommodations Clause is narrowly tailored to further that interest.

### A.  The Accommodations Clause is Neutral on Its Face.

Regulations of speech are content neutral if they are "justified without reference to the content or viewpoint of the regulated speech." *Christian Legal Soc'y Chapter of Univ. o Cal. Hastings Coll. Of the Law v. Martinez*, 561 U.S. 661, 696. If the regulated speech is content neutral, then intermediate scrutiny applies. Under intermediate scrutiny, courts ask if "the restriction is narrowly tailored to serve a significant government interest, and leaves[s] open ample channels of communication." *Saieg v. City of Dearborn*, 641 F.3d 727, 735 (6th Cir. 2011). The County's Accommodations Clause is content neutral because it does not directly regulate speech, viewpoint, or expression; therefore, intermediate scrutiny applies.

The purpose of the Accommodations Clause is to guarantee equal access to places of public accommodations and prevent discrimination against individuals and groups denied such accommodations based on their race, gender, sexual orientation, etc. The law does not prevent Stokes from writing about her religious beliefs or posting about her beliefs on social media or her (inactive) website. Nor does it require her to write any message positive or neutral about viewpoints that she disagrees with. It merely precludes a place of public accommodations from denying its services to certain members of the public who have traditionally been discriminated against. And it does so without reference to content or viewpoint. Based on the above, the County has shown that the

7

Accommodations Clause: (1) is narrowly tailored to address discrimination against same-sex couples; (2) serves a significant government interest (equal access to all citizens to public accommodations; and (3) leaves open other channels of communications for speakers (Stokes can espouse whatever views she wants without running afoul of the Accommodations Clause).

Discrimination causes harms ranging from limiting opportunities and access to goods and services for some people that others may take for granted, to facing deeply personal and hurtful words and acts of discrimination routinely occurring in everyday life. For lesbian, gay, bisexual and transsexual people, public accommodations laws help to ensure equal opportunity to participate in the "transactions and endeavors that constitute ordinary civic life in a free society." *Romer v. Evans*, 517 U.S. 620, 631 (1996). With this backdrop, the County took action to expand its anti-discrimination ordinance and include additional classifications of protected classes.

Because state law does not offer protections for people based on sexual orientation and gender identity and expression, the County met with representatives from the American Civil Liberties Union and held two open forums where approximately 220 people attended and offered public comment. Prior to the passage of the law, all formal actions of Council relating to its adoption were held in open meetings, and deliberations regarding the Accommodations Clause. County Council approved provisions of the anti-discrimination code on September 25, 2018.

Notwithstanding the clear terms in the ordinance, Plaintiffs now assert that the Accommodations Clause targets and discriminates against them because of Stokes' religious beliefs. Plaintiffs' argument fails as a matter of law because the Accommodations Clause itself is a neutral law of general applicability because it (1) broadly applies to "public accommodations" that choose to serve the public at large; and (2) requires that once a business chooses to offer goods and services to the public through a place, it may not refuse to provide those goods and services to customers, to contract

8

with a person, or discriminate in the terms of their contracts based on enumerated personal characteristics, including race, religion, and sexual orientation.

While Plaintiffs string cite several cases to support their position that the ordinance somehow impugns their rights, their reliance on this case law is misplaced. First, unlike the cited cases, Plaintiffs cannot cite to any part of the instant ordinance that specifically directs them to say or do anything. Second, Plaintiff's reliance on *Hurley*, *supra*, *Telescope Media v. Lucero, 936 F. 3d 740 (8th Cir 2019)*, *Griswort v. Columbus Disptatch*, 238 F. 3d 421 (6th Cir. 2000), and *Johari* v. *Ohio State Lanter*, 76 F. 3d. 379 (6th Cir. 1996), is unpersuasive because none of those cases involve "public accommodations." (*See* Plaintiff's Motion p. 7.)

The First Amendment's free exercise clause guarantees "the right to believe and profess whatever religious doctrine one desires." *Employment Division v. Smith*, 494 U.S. 872, 877 (internal quotations omitted). This right, however, does not "relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Smith*, 494 U.S. at 879. *See also*, *Masterpiece Cakeshop Ltd. v. Colo. Civil Rights Com'n*, 138 S. Ct. 1719, 1727 (2018)(religious objections, although protected, do not allow business owners and other actors to invoke religious objections as a defense to violations of neutral and generally applicable anti-discrimination laws); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019) (ruling that "religious or conscientious objections do not supersede the basic obligation to comply with generally applicable civil rights laws provided those laws are applied neutrally.") As applied, Plaintiffs cannot use their religious views to inject requirements- especially where none exist within the four corners of the ordinance- as an excuse not to comply with the County's content neutral ordinance.

**B.    The County Law doesn't restrict speech based on content or viewpoint.**

Plaintiffs conflate the distinction between laws directly regulating speech and those that incidentally affect speech or expression. The Accommodations Clause would fall into the latter category because the purported restrictions placed on speech are incidental to the primary purpose of the law: guaranteeing equal access to public accommodations. In *Konigsberg v. State Bar of California*, 366 U.S. 36, 50-51 (1961), the Supreme Court held:

> general regulatory statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise, have not been regarded as the type of law the First or Fourteenth Amendment forbade Congress or the States to pass, when they have been found justified by subordinating valid governmental interests, a prerequisite to constitutionality which has necessarily involved a weighing of the governmental interest involved. [citations omitted].

*See also United States v. O'Brien*, 391 U.S. 367, 376 (1968). In *San Francisco Arts & Athletics*, Inc. *v. United States Olympic Comm.*, 483 U.S. 522, 537 (1987), plaintiff sought to organize the "Gay Olympic Games." *San Francisco Arts & Athletics*, 483 U.S. at 439. But a law gave the U.S. Olympics Commission exclusive rights over the use of the term "Olympics." The non-profit noted that other organizations were permitted to use "Olympics" in their name (the Junior Olympics, Special Olympics, etc.). *Id.* at 570. But when plaintiff used "Olympics" in conjunction with the term "Gay," the USOC asked plaintiff to cease. *Id.* at 534. The Court determined that the government's incidental restrictions on plaintiff's First Amendment Freedoms were no greater than necessary to advance a substantial government interest in determining when and how the term "Olympic" was used:

> mere fact [plaintiff] claims an expressive, as opposed to a purely commercial, purpose does not give it a First Amendment right to "appropriat[e] to itself the harvest of those who have sown." *International News Service v. Associated Press*, 248 U.S., at 239-240. The USOC's right to prohibit use of the word "Olympic" in the promotion of athletic events is at the core of its legitimate property right.

*Id.* at 541.

Here, the Accommodations Clause does not, on its face, restrict Stokes speech. She is permitted, in her personal capacity, to engage in any speech activities she desires no matter how odious. So, Stokes contention that Accommodations Clause "directly" restricts her speech is false. But

10

even if the Accommodations Clause has an incidental effect on her speech when she communicates through her business, Covenant, the law furthers a substantial government interest: guaranteeing that all citizens – regardless of their race, religion, military status, sexual orientation, etc. – are guaranteed equal access to places of public accommodation. Moreover, as demonstrated above, Plaintiff Stokes is free to engage in any expressive activity she desires without running afoul of the Accommodations Clause (e.g., she is not compelled to write homilies, vows, prayers espousing same-sex marriage). Thus, the Accommodations Clause does not restrict Plaintiffs' speech in violation of the First Amendment.

### C. The County law does not compel Stokes to write messages she objects to.

The Accommodations Clause does not compel Stokes to write messages she objects to. This Code Section prevents "Places of Public Accommodation" from engaging in discriminatory practices. Neither Stokes nor her business is a place of public accommodation. Moreover, there is no express language in §1501.02(C)(2) that makes it an unlawful discriminatory practice for Stokes from personally refusing to write wedding homilies, vows, or prayers for same-sex couples. Plaintiff is drawing an inference that is not supported from the text of the Accommodations Clause.

### D. The County law does not compel speech based on content or viewpoint.

The Accommodations Clause does not prohibit Stokes from personally exercising her rights under the First Amendment to speak out against same-marriage or object to issues concerning gender identity. At best, she can argue only that the Accommodations Clause prevents her, as a member of Covenant, from engaging in discriminatory practices violative of the clause. Therefore, it is disingenuous for Stokes to suggest the Accommodations Clause compels her speech based on content and viewpoint. To the extent Stokes claims the Accommodation clause compels speech based on content and viewpoint when she is acting as a member of Covenant, she is wrong.

The Supreme Court's "compelled speech" precedents are divided into two categories. The first category of compelled speech is where the government directly compels a person to speak a

11

message dictated by the government. *See Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*, 547 U.S. 47, 61 (holding the Solomon Amendment's requirement that the schools engage in certain speech to provide equal military recruiting access did not constitute compelled speech); cf. *Wooley* v. *Maynard*, 430 U.S. 705, 717 (holding unconstitutional a law requiring plaintiff, a Jehovah's witness, to display New Hampshire's "live free, or die" moto on a license plate). In *Rumsfeld*, plaintiffs (an association of law schools) opposed the "don't ask, don't tell policy" established under 10 U.S.C. §654 because it violated the schools' anti-discrimination policies. *Id.* 547 U.S. at 47. So, congress enacted the Solomon Amendment, which withdrew federal funds if a school refused to allow military recruiters on campus similar to other recruiters. *Id.* at 51. The Court found that the requirement of equal access did not resemble "a Government-mandated pledge or motto that the schools must endorse." *Id.* at 62.

The Accommodations Clause does not compel Plaintiffs to speak any governmental message (or say anything). It merely requires equal access to places of public accommodation. It does not require Plaintiffs to offer services celebrating same-sex marriage or gender identity, nor does it require them to favor speech concerning same-sex marriage over other speech. The Accommodations Clause provides equal access to certain groups who have been discriminated against based on sex or sexual orientation. And it is distinguishable from a law that compels a person to engage in government mandated speech (like displaying a state moto that conflicts with the plaintiff's religious beliefs), because it does not compel any type or speech or require Plaintiff to speak at all.

The second category of compelled speech involves the government forcing one speaker to host or accommodate another speaker's message." *Id.* at 63. In this line of cases, the speaker's ability to disseminate its own message is directly impaired by the speech it was forced to accommodate. *Id.*; *see, e.g. Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Baston, Inc.*, 515 U.S. 557, 566 (1995). In *Hurley*, the Court found that the application of a public accommodations law to a privately organized St. Patrick's Day parade was unconstitutional because the organizers' speech was

12

"inherently expressive." *Hurley,* 515 U.S. at 572. The Court found the application to be impermissible because it did not regulate conduct with only an incidental effect on expression; it directly regulated the content of the private parade sponsor's speech. *Id.* at 573.

The Accommodations Clause does not require Plaintiffs to host or accommodate another speaker's message. Plaintiffs are operating a business that provides wedding services for a fee. But only Stokes may solemnize a marriage – not Covenant – under Ohio law. *See* R.C. 3101.08. And she is not required to solemnize any marriage that goes against her beliefs. *Id.* Presumably then, Stokes would not be solemnizing any same-sex marriage where she would provide vows, homilies, or prayers. Now, in the off-chance that a same-sex couple wanted to hire her to right vows, homilies, or payers, the Accommodations Clause would not compel her to say anything positive or negative about same-sex marriage or gender identity. She could easily write something that excoriates the notion of same-sex marriage, and the customer would decide whether to purchase the service. The Accommodation Clause does not compel Plaintiffs to say good, bad, or indifferent things about same-sex marriage or gender identity. It does not require Plaintiffs to express any viewpoint whatsoever.

### E. Plaintiffs' Freedom of Speech Argument Fails.

The mere fact that the Accommodations Clause possibly touches upon Plaintiffs' speech at all does not render the ordinance unconstitutional. This is because "virtually all government regulation affects speech. Human relations take place through speech. And human relations include community activities of all kinds—commercial and otherwise." *Expressions Hair Design v. Schneiderman*, 137 S.Ct. 1144, 1152 (2017) (Breyer, J. concurring). Plaintiffs' speech claims fail for similar reasons as their religion claims: (1) the County's Accommodations Clause permissibly regulates discriminatory conduct without burdening other rights; (2) Plaintiffs are not "public accommodations" and (3) Plaintiffs are not compelled to oversee same-sex marriages or write anything in support of same-sex marriage.

### F. The Accommodations Clause survives Strict Scrutiny.

13

As noted above, the Accommodations Clause is content neutral; therefore, intermediate scrutiny applies. But even if strict scrutiny applies, the Accommodations Clause survives. Courts "plainly" recognize remediation of discrimination as a compelling government interest. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *see, e.g.*, *Bob Jones University v. United States*, 461 U.S. 574, 604 (1983). This is because discrimination "deprives persons of their individual dignity and denies society the benefits of wide participation in political, economic, and cultural life," *Jaycees*, 468 U.S. at 625, and causes "unique evils that the government has a compelling interest to prevent." *Id.* at 628.

Furthermore, the Accommodations Clause is narrowly crafted to prohibit discrimination and avoid any unnecessary inclusion of Plaintiff or others based on religion. As previously noted, the Accommodations Clause's provisions are inapplicable to Plaintiff and private entities; they apply only to "places of public accommodations," which Plaintiffs are not.

The Supreme Court has repeatedly affirmed that a governmental entity has a valid and compelling interest in assuring equal access to public accommodations for all residents and may accomplish this goal by enumerating groups and characteristics "within the ambit of protection." *Romer*, 517 U.S. at 628. In *Jaycees*, the Court concluded that the state nevertheless has a compelling interest in preventing gender discrimination in public accommodations. *See Jaycees*, 468 U.S. at 623, Hurley, 515 U.S. at 572 (quoting Mass. Gen. Laws § 272:98 (1992). Under this rubric, the County undeniably has a compelling interest in protecting its population- and whatever classes of persons within that population are in need protection—from discrimination in public accommodations. *See Hurley* at 515 U.S. at 572.

### III. PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM.

Plaintiffs cannot establish that they will suffer irreparable harm without their requested relief. In the context of a preliminary injunction, irreparable harm has been described as harm that is "actual and imminent" as opposed to "speculative or unsubstantiated." *Johnson v. City of Memphis*, 444 Fed.

14

Appx. 856, 2011 U.S. App. LEXIS 21941, 2011 FED App. 0737N (6th Cir.) Here, Plaintiffs' fear of enforcement is based solely on their subjective perceptions and apprehension. There has been no threat of enforcement of the Accommodations Clause against Plaintiffs. Consequently, Plaintiffs do not establish irreparable harm necessary to warrant injunctive relief.

### IV.     GRANTING RELIEF WILL CAUSE SUBSTANTIAL HARM.

The County has a compelling interest in eliminating discrimination and assuring its citizens equal access to publicly available goods and services. Public accommodation laws protect "the citizenry from a number of serious social and personal harms." *Roberts*, 468 U.S. at 625. Being turned away from public accommodations like restaurants, doctor's offices, and retail stores because of one's identity "deprives persons of their individual dignity." *Id.* The Accommodations Clause seeks to eliminate the deprivation of goods, services and personal dignity that accompanies denials of equal access to public establishments." *Heart of Atlanta Motel*, 379 U.S. at 250. The Accommodations Clause is a critical part of enabling the County to protect the public.

### V.     PUBLIC INTEREST WILL NOT BE SERVED BY GRANTING THIS RELIEF.

Anti-discrimination laws ensure "society the benefits of wide participation in political, economic, and cultural life." *Roberts*, 468 U.S. at 625; *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733–34 (2014). As a practical matter, granting Plaintiffs' requested injunctive relief will likely have the adverse effect of encouraging businesses to discriminate against LGBT persons. The Accommodations Clause does not compel Plaintiffs to take any action or espouse any governmental policy, it simply provides for equal access to goods and services in a place of public accommodation. Any "interest" Plaintiffs have must be weighed against the interest that the County has in protecting its citizens from discrimination. The public interest will not be served by granting this injunction.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

Respectfully submitted,

MICHAEL C. O'MALLEY, PROSECUTING
ATTORNEY OF CUYAHOGA COUNTY, OHIO

By:     */s/ Brendan D. Healy*
        BRENDAN D. HEALY (0081225)
        Tel: (216) 698-6447
        bhealy@prosecutor.cuyahogacounty.us
        JANEANE R. CAPPARA (0072031)
        Tel: (216) 698-2224
        jcappara@prosecutor.cuyahogacounty.us
        Assistant Prosecuting Attorneys
        The Justice Center, Courts Tower
        1200 Ontario Street, 8th Floor
        Cleveland, Ohio 44113
        Fax: (216) 443-7602

*Attorneys for Defendant Cuyahoga County*